Case 1:21-cv-00127   Document 34   Filed on 02/14/22 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
February 14, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| NATALLY HERNANDEZ, § | | |
|    Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 1:21-cv-127 | |
| § | | |
| COMPREHENSIVE HEALTH § | | |
| SERVICES, § | | |
|    Defendant. § | | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On July 21, 2021, Plaintiff Natally Hernandez filed suit against Comprehensive Health Services in Cameron County Court at Law No. 1. Dkt. No. 2, p. 5. On August 23, 2021, Comprehensive Health timely removed the case to this Court on the basis of diversity jurisdiction. Dkt. No. 1.

On November 12, 2021, Comprehensive Health filed a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6). Dkt. No. 16. The motion has been fully briefed. Dkt. Nos. 27-2, 33.

After reviewing the record and the relevant case law, it is recommended that the motion to dismiss be granted. Hernandez has failed to state a claim upon which relief can be granted.

**I. Background**

   **A. Factual Background**

In August 2019, Hernandez was hired by Comprehensive Health as a youth care worker. Dkt. No. 32, p. 3. Comprehensive Health operates shelters for unaccompanied alien minor children as a contractor for the U.S. government. Dkt. No. 16, p. 6.

When she applied for the job, Hernandez affirmed under penalty of perjury that she had "never been the subject of any child abuse or neglect investigations, substantiated or unsubstantiated." Dkt. No. 16-1, p. 1. She also affirmed, under penalty of perjury, that she

1

had never had a previous employment position terminated due to sexual misconduct with a minor. Dkt. No. 16-2.[1]

In September 2019, Jose de los Reyes was hired as a shift leader. Dkt. No. 32, p. 3. De los Reyes would speak to Hernandez "in a very friendly and flirtatious manner." Id., p. 3. While the complaint does not quote any specific statements, it alleges that the comments made "it seem[ed] as if [Hernandez] acquiesced, she would have special privileges or be able to only count on him for favors or assistance." Id. Hernandez "refused these advancements," leading to a change in how de los Reyes treated her. Id.

Hernandez alleges that de los Reyes would look at her "as if she bothered him or annoyed him which made [Hernandez] feel uncomfortable, more-so if she had to bring up certain matters to his attention." Dkt. No. 32, p. 3. If Hernandez "would leave for a moment to go to the restroom or go on her lunch break," de los Reyes would report her for leaving her post, leading to Hernandez receiving verbal warnings for not doing her job. Id.

In March 2020, Hernandez made an unspecified report to Child Protective Services; the complaint does not identify the nature of the report or its factual content. Dkt. No. 32, p. 3. Another shift supervisor, identified as simply as "Zujeyri," questioned the staff about who made the report. Id. A former co-worker contacted Hernandez "mentioning that Zujeyri told her that she was not to leave the office until she told her who it was that called CPS." Id., p. 3.

Also in March 2020, de los Reyes assigned Hernandez and a co-worker to clean a certain building. Dkt. No. 32, pp. 3-4. De los Reyes told the co-worker, "Between us let me know if Natally leaves her post, ok? Just advise me. I'll take care of it, she tends to leave her post." Id. Hernandez and her co-worker later went to help in the gym, supervising minors, but as soon as de los Reyes saw Hernandez there, he told her to leave the gym. Id.

---

[1] Comprehensive Health offered Hernandez's application and termination paperwork as exhibits to its motion to dismiss. When deciding a motion to dismiss, the Court may consider "documents incorporated into the complaint by reference." Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 763 (5th Cir. 2011). The complaint references the application and the termination paperwork, so the Court may properly consider them at this stage of the proceedings.

Hernandez left, only to have three shift supervisors ask her why she left her post. Id. It is unclear if the shift supervisors were asking why she left the cleaning post or the gym. Id.

Again, in March 2020, Hernandez was returning from her lunch break when de los Reyes and another male shift leader took her into "an empty room that had functioning cameras" in it. Dkt. No. 32, p. 4. Hernandez "felt very disturbed having two male supervisors call her in with no other female in attendance, not allowing her to explain why she was not at her post because had just returned back from her lunch break." Id. De los Reyes and the other shift leader sent out an email, stating that Hernandez had left her post. Id. Later that day, her shift supervisor, identified as "Melissa," asked Hernandez about why she left her post; Hernandez explained that it was because it was time for her scheduled lunch break. Id. Hernandez also explained that she was uncomfortable being called into a room with two male supervisors and no females present. Id. Melissa responded, "If there are cameras don't worry and also do not take it personal." Id.

The next day, Hernandez asked another shift leader, named Megan, for help with her job. Dkt. No. 32, p. 5. Megan took notes on what happened the previous day and told Hernandez that "she would help her after [Hernandez's] shift ended." Id. At the end of the shift, Hernandez and Megan spoke with Zujeyri, who gave Hernandez "the impression that she would assist her." Id. About a week later, Zujeyri called Hernandez into Zujeyri's office, based on another email about Hernandez leaving her post. Id., p. 5. Hernandez replied that she was at her post and requested that Zujeyri speak with her-coworkers and review the camera footage to verify her response. Id. Zujeyri replied, "There is no need to ask coworkers and there is no need to check cameras. We only check cameras if it's a serious incident." Id. Hernandez said, "Ma'am I do not feel comfortable working with Jose because he is jeopardizing my job by sending these emails which I know can lead me to a write up. The cameras are always being checked regardless." Id. Zujeyri denied that the cameras were always being checked. Id. Hernandez told her, "This whole situation with Jose is getting out of hand and I feel harassed by him, and if I need to take it to HR or just go and press charges on him so he can leave me alone I'll do it because I have a son and I'm a single mother who cannot afford to lose my job because a Shift Leader wants to get

3

me in trouble any chance he gets." Id.  The complaint alleges that Zujeyri used a threatening voice in responding, "Do not take any further action." Id.

Hernandez then applied for a medical assistant position at Comprehensive Health in the hopes that being placed in a different department would keep her away from de los Reyes. Dkt. No. 32, p. 5.  Hernandez received an unspecified write-up within two to three weeks of applying for the job and was told by someone – not specified in the complaint – that it "was more likely she was not going to get" the medical assistant job. Id.

On April 1, 2020, Hernandez was told not to return to work until April 11, 2020, because of schedule changes related to the COVID-19 pandemic. Dkt. No. 32, p. 5.  On April 10, 2020, Hernandez was told to stay away from work until further notice because she came into contact with someone who tested positive for COVID-19. Id.  In May 2020, HR Manager Manolo Gonzalez told Hernandez she needed to be cleared by a doctor before she could return to work. Id., pp. 5-6.  On May 5, 2020, Hernandez was cleared to work and was told to return to work on May 9, 2020. Id.  On May 8, 2020, Hernandez was told not to return to work until further notice. Id.  On May 12, 2020, Hernandez was informed that she was suspended from work, but no one told her why. Id.

On May 21, 2020, Julissa Garza from "Licensing"[2] showed up at her home, asking her questions about her previous employment at Southwest Key Casa Padre. Dkt. No. 32, pp. 6-7.  She said that she discovered that an allegation had been made that her romantic partner was a minor from Casa Padre. Id.  Hernandez told Garza that her boyfriend was older than her and that they had not met at Casa Padre. Id.  On June 3, 2020, her boyfriend sent his ID to Garza, so she could verify his name and date of birth. Id.

On June 5, 2020, Hernandez was informed that she had a meeting with human resources on June 8, 2020. Dkt. No. 32, p. 7.  Hernandez called Garza to verify that she had received her boyfriend's information because Garza had told Hernandez that "she was going to close the case" after verifying the information. Id.  Hernandez also told Garza that Fernanda Rodriguez, another female co-worker, had violated several policies without any

---

[2] The Defendant has identified "Licensing" as the Texas Department of Family and Protective Services, an outside agency. Dkt. No. 33,

repercussions and that Rodriguez had told other employees it was because she had slept with de los Reyes, who was protecting her. Id.  Garza said she would advise her supervisor of those allegations, but that she also did not quite believe Hernandez's boyfriend. Id.  At the time, Hernandez understood that Garza would either clear her of all wrongdoing or place her on a status that would leave her unable to work directly with children. Id.

On June 8, 2020, Hernandez was called into a meeting with human resources and was told that she was being terminated for falsifying her application when she stated that she was not under previous investigation. Dkt. No. 32, pp. 7-8.  Hernandez told them she was not at fault in the Casa Padre situation and that legal aid had advised her that she could truthfully state that there were no pending investigations when she applied for the job at Comprehensive Health. Id.  The human resources representative told Hernandez that "they didn't care whether she was at fault or not" in the Casa Padre situation. Id.  Hernandez stated that Garza still had not issued a letter regarding her investigation; the human resources representative said that Garza's investigation had no bearing on her termination. Id.  Hernandez refused to sign any termination papers. Id.

The employment termination paperwork stated that Hernandez failed to disclose to Comprehensive Health that her previous employment at Casa Padre was terminated "due to Prison Rape Elimination Act related behavior/investigation," which would have made her to be "un-hireable." Dkt. No. 16-3.

On June 18, 2020, Hernandez filed for unemployment benefits. Dkt. No. 32, p. 8.  On June 19, 2020, Hernandez was informed that "she was disqualified from receiving unemployment benefits," which made her feel discriminated against. Id.

Hernandez filed a dual employment discrimination charge with the Texas Workforce Commission, raising claims both under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Texas Commission on Human Rights Act ("TCHRA"). Dkt. No. 12-1.  On May 23, 2021, Hernandez received a right to sue letter from the Texas Workforce Commission. Dkt. No. 12-1, p. 3.  Hernandez has not submitted any evidence of a right to sue letter from the Equal Employment Opportunity Commission ("EEOC").

**B. Procedural History**

On July 21, 2021, Hernandez filed suit against Comprehensive Health in Cameron County Court at Law No. 1. Dkt. No. 2, p. 5. Hernandez alleged that Comprehensive Health wrongfully terminated her based on gender and retaliation for protected activity, in violation of the TCHRA. Id, pp. 12-13. No claims were raised under Title VII.

On July 28, 2021, Comprehensive Health was served. Dkt. No. 1. On August 23, 2021, Comprehensive Health timely removed the case to this Court on the basis of diversity jurisdiction. Id.

On October 19, 2021, Hernandez filed a first amended complaint. Dkt. No. 12. In that complaint, Hernandez raised a single claim of gender discrimination in violation of Title VII; she did not raise any claims under the TCHRA. Id., p. 8.

On November 12, 2021, Comprehensive Health filed a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6). Dkt. No. 16. Comprehensive Health argued that Hernandez failed to exhaust administrative remedies as to her amended complaint, because she never received an EEOC right to sue letter. Id. It also argues that Hernandez has failed to plead facts showing a plausible claim of gender discrimination. Id.

On January 6, 2022, Hernandez timely filed her response to the motion to dismiss. Dkt. No. 23. Hernandez did not address the argument that she failed to exhaust her administrative remedies. Id. She did argue that she pled a plausible claim of gender discrimination. Id.

On January 13, 2022, Comprehensive Health filed its reply brief. Dkt. No. 24.

On January 19, 2022, after briefing had concluded, Hernandez filed a motion for leave to amend her complaint and to file an amended response to the motion to dismiss. Dkt. No. 27. Hernandez sought to revive her TCHRA claims and drop her Title VII claims. Id. Thus, the second amended complaint does not raise any federal claims. On January 27, 2022, Comprehensive Health filed a response, opposing the motion to amend as futile. Dkt. No. 30.

On January 28, 2022, the Court granted the motion to amend the complaint, allowing Hernandez to have the benefit of her best-pled complaint. Dkt. No. 31. The

6

second amended complaint is now the operative complaint in this case. Dkt. No. 32. The Court also gave Comprehensive Health leave to file an amended reply brief. Dkt. No. 31.

On February 8, 2022, Comprehensive Health filed an amended reply brief, arguing that (1) by dropping the TCHRA claims in the second amended complaint, Hernandez did not timely file those claims; (2) Hernandez failed to state a claim for gender discrimination; and (3) Hernandez failed to state a claim for retaliation. Dkt. No. 33.

## II. Applicable Law

### A. Motion to Dismiss

Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to plead sufficient facts "to state a claim to relief that is plausible on its face." Ferguson v. Bank of New York Mellon Corp., 802 F.3d 777, 780 (5th Cir. 2015) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then dismissal is proper. Id. at 679.

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019). All well-pled facts must be viewed in the light most favorable to the plaintiff. Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan, 960 F.3d 190, 194 (5th Cir. 2020).

Dismissal, for failing to state a claim upon which relief can be granted, is a dismissal on the merits and with prejudice. Memon v. Allied Domecq QSR, 385 F.3d 871, 874 n. 6 (5th Cir. 2004).

**B. Timeliness**

A civil suit under the Texas Commission on Human Rights Act must be brought within 60 days of receiving a right to sue letter. Tex. Lab. Code § 21.254. "Although the sixty-day period is not considered jurisdictional under Texas law, actions filed in federal court after the expiration of sixty days are routinely dismissed as untimely." Lottinger v. Shell Oil Co., 143 F. Supp. 2d 743, 753 (S.D. Tex. 2001).

**C. Employment Discrimination**

Both state and federal law utilize the three-part, burden-shifting test, known as the McDonnell Douglas[3] test, to judge claims of employment discrimination. Goudeau v. Nat'l Oilwell Varco, L.P., 793 F.3d 470, 474 (5th Cir. 2015).

"Under the McDonnell Douglas analysis, a plaintiff is entitled to a presumption of discrimination if he can meet the minimal initial burden of establishing a prima facie case." Reed v. Neopost USA, Inc., 701 F.3d 434, 439 (5th Cir. 2012). The standards for whether a plaintiff has pled a prima facie case of discrimination are identical under both state and federal law. Goudeau, 793 F.3d at 474.

The elements of a prima facie case of employment discrimination are that the plaintiff: (1) is a member of a legally-protected class; (2) was qualified to hold the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside of the protected class. Mission Consol. Independent School Dist. v. Garcia, 372 S.W.3d 629, 634 (Tex. 2012); Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trustees, 709 F. App'x 243, 247 (5th Cir. 2017).

At the motion to dismiss stage, the Court does not mechanically apply the McDonnell Douglas test. Scott v. U.S. Bank Nat'l Ass'n, 16 F.4th 1204, 1210 (5th Cir. 2021), as revised (Nov. 26, 2021). Rather, the Court can use the McDonnell Douglas framework to determine if the plaintiff has "plausibly alleged the ultimate elements of the disparate treatment claim." Id.

---

[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

**III. Analysis**

The Court must determine (1) whether Hernandez timely filed her suit and (2) whether she has stated a plausible claim of gender discrimination. The Court finds that her suit is timely filed, but, because she wasn't eligible for the job in the first place, she has failed to raise claims under state law.

    **A. Timeliness**

Hernandez's second amended complaint raises claims of gender discrimination and retaliation under the TCHRA. Hernandez has timely filed her suit in this case.

Under Texas law, Hernandez was required to file suit within 60 days of receiving a right to sue letter. Vielma v. Eureka Co., 218 F.3d 458, 463 (5th Cir. 2000) (citing TEX. LABOR CODE § 21.254). On May 23, 2021, Hernandez received a right to sue letter from the Texas Workforce Commission. Dkt. No. 12-1, p. 3. On July 21, 2021, Hernandez filed suit against Comprehensive Health in Cameron County Court at Law No. 1. Dkt. No. 2, p. 5. In that suit, she raised TCHRA claims of gender discrimination and retaliation. Id., pp. 12-13. Thus, those claims were initially timely filed.

On October 19, 2021, Hernandez filed an amended complaint, which dropped the TCHRA claims. Dkt. No. 12. On January 28, 2022, Hernandez filed a second amended complaint, which revived the TCHRA claims. Dkt. No. 32. Comprehensive Health argues that when those claims were dropped from the amended complaint, they were considered dismissed and were not timely re-filed within the statutory 60-day period. Dkt. No. 33.

The Court begins by noting that "[a]n amended complaint may 'relate back' to an original complaint for statute of limitations purposes." Sanders-Burns v. City Of Plano, 594 F.3d 366, 372 (5th Cir. 2010). An amendment relates back, for statute of limitations purposes, when the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The purpose of the rule is accomplished if the initial complaint gives the defendant fair notice that litigation is arising out of a specific factual situation." Longbottom v. Swaby, 397 F.2d 45, 48 (5th Cir. 1968).

The second amended complaint in this case relates back to the filing of the original complaint. In both complaints, Hernandez asserted claims arising out of the same conduct: how she was treated by her supervisors at Comprehensive Health and the circumstances surrounding the termination of her employment. Other district courts have found that in the context of employment discrimination cases that if a subsequent amendment relates back to the original complaint that the amended complaint is timely filed in relation to the right to sue letter. Young v. City of Richardson, 2016 WL 1258475, at *6 (N.D. Tex. Mar. 31, 2016); Boone v. Union Carbide Corporation, 205 F. Supp. 2d 689, 695 (S.D. Tex. 2002); Moore v. Baylor Health Care Sys., 2004 WL 884436, at *4 (N.D. Tex. Apr. 23, 2004). Thus, the Court should find that Hernandez's TCHRA claims are timely filed.

**B. Gender Discrimination**

The fact that the claim is timely, does not save the claim. Simply stated, Hernandez has not stated a plausible claim of gender discrimination.

While the Court does not mechanically apply the McDonnell Douglas test, it does look to that test to determine if a plaintiff has stated a plausible claim of gender discrimination. Scott, 16 F.4th at 1210. One of the elements of a gender discrimination claim is that the plaintiff was qualified for the position. Newbury v. City of Windcrest, 991 F.3d 672, 679 (5th Cir. 2021). Hernandez was not qualified for her position; thus, she has not made a plausible allegation of gender discrimination.

As a federal contractor that houses unaccompanied minor children, Comprehensive Health is subject to the Prison Rape Elimination Act. 34 U.S.C. § 30307(d)(2). As such, Comprehensive Health was legally required to ensure that Hernandez had never had prior employment terminated for sexual misconduct with a minor. 45 C.F.R § 411.16(a)-(b). Under federal law, "[m]aterial omissions regarding such misconduct or the provision of materially false information by the applicant or staff will be grounds for termination or withdrawal of an offer of employment." § 411.16(f).

Hernandez stated under penalty of perjury that she had "never been the subject of any child abuse or neglect investigations, substantiated or unsubstantiated." Dkt. No. 16-

1, p. 1. She also affirmed, under penalty of perjury, that she had never had a previous employment position terminated due to sexual misconduct with a minor. Dkt. No. 16-2.

Comprehensive Health later discovered that Hernandez's employment with Casa Padre had been terminated because of allegations of sexual misconduct with a minor. Dkt. No. 16-3, p. 1. The truth or falsity of those allegations are irrelevant to Hernandez's duty to disclose the existence of those allegations. The fact remains that Hernandez did not fully disclose all information regarding her previous employment, giving Comprehensive Health full legal grounds for terminating her employment. 45 C.F.R § 411.16(f). While Hernandez claims that legal aid lawyers told her that she could truthfully say that she was under no pending investigations, that advice changes nothing. Indeed, Hernandez was still required to admit that she was investigated during her prior employment, which resulted in her losing that job. Dkt. Nos. 16-1; 16-2; 32, pp. 7-8.

Hernandez's material omissions rendered her unqualified for the position, dooming any claim of gender discrimination. See Davis v. Dallas Indep. Sch. Dist., 448 F. App'x 485, 491 (5th Cir. 2011) (plaintiff could not maintain a gender discrimination claim when she lacked the required security clearance for her position). Put another way, Hernandez could have been a model employee who was beloved by her co-workers and supervisors and Comprehensive Health would have still been forced to fire her — as a matter of federal law and regulation — because of the investigation and termination of her prior employment. Thus, it was the actions of the previous employer, combined with the actions Hernandez took when applying to the second employer, that created the problems for Hernandez.

Furthermore, a gender discrimination claim requires the plaintiff to plead facts showing they were treated less favorably than members of the opposite gender. See Alkhawaldeh v. Dow Chem. Co., 851 F.3d 422, 427 (5th Cir. 2017) ("It is well-established that a Title VII claimant can only prove disparate treatment by presenting evidence that he was treated less favorably than others outside of his protected class.") (emphasis original). Hernandez has pled no facts showing that she was treated less favorably than a male youth services worker. She has pled no facts showing that a male employee with a similar

employment background would have been permitted to keep his job. In short, she has pled no facts leading to a plausible claim of gender discrimination.

### C. Retaliation

"To prevail in a retaliation action under the TCHRA, the plaintiff must establish a prima facie case showing that: (1) he engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action." Avila v. United Parcel Serv., Inc., 2018 WL 4100854, at *9 (Tex. App. Aug. 29, 2018). As to the first element, protected activities consist of "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Dias v. Goodman Manufacturing Co., 214 S.W.3d 672, 676 (Tex. App. 2007) (citing TEX. LABOR CODE § 21.055). As to the third element, "the plaintiff must establish a 'but for' causal nexus between the protected activity and the prohibited conduct." Avila, 2018 WL 4100854, at *9.

In the second amended complaint, Hernandez alleges that she was "retaliated against for opposing her supervisor's conduct and filing and/or making a complaint." Dkt. No. 32. In her response to the motion to dismiss, she alleges that she was fired three days "after reporting that her co-worker was involved in a quid-pro-quo with de los Reyes." Dkt. No. 27-2, p. 9. This simply is not enough under the facts of this case.

For example, some courts have recognized that reporting consensual misconduct by co-workers does not constitute a protected activity when the reported conduct does not involve any employee "being treated unfairly due to sex or any other unlawful employment practice." Lucan v. HSS Sys., L.L.C., 439 S.W.3d 606, 614 (Tex. App. 2014) (emphasis added) (reporting co-workers for simulating sexual activity in the office was not a protected activity when there was no evidence that it was done to sexually harass the plaintiff); Arora v. Starwood Hotels & Resorts Worldwide, Inc., 294 F. App'x 159, 162 (5th Cir. 2008) (an employee's report about "two managers [who] were engaging in sexually provocative behavior" was not protected activity under the TCHRA).

12

This principle extends beyond sexual misconduct. Instead, protected activity must center on discrimination based on "race, color, disability, religion, sex, national origin, or age" <u>Gonzalez v. Champion Techs., Inc.</u>, 384 S.W.3d 462, 472-73 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). Even the reporting of clear workplace misconduct does not amount to protected activity under the TCHRA if it does not fall within those categories. <u>Sherman v. Dallas ISD</u>, 2011 WL 477500, at *7 (N.D. Tex. Jan. 24, 2011), <u>report and recommendation adopted</u>, 2011 WL 477465 (N.D. Tex. Feb. 8, 2011) (reporting that a co-worker assaulted a student was not protected activity because it did not "involve an employee being treated unfairly based on his race, color, sex, religion, or national origin").

In short, a complaint that a plaintiff was unjustly treated less favorably than other employees (male or female) is not protected activity, because the complaint was not linked to some form of discrimination. <u>Ellini v. Ameriprise Fin., Inc.</u>, 881 F. Supp. 2d 813, 817 (S.D. Tex. 2012). Put another way, Hernandez reported that Fernandez and de los Reyes were engaging in unprofessional activity; but there was no basis to conclude from her report that they were engaging in discriminatory activity. As such, her report was not protected activity.

Furthermore, even if it was protected activity, Hernandez has not shown a causal link between the activity and the termination of her employment. Hernandez reported the misconduct to Garza after Garza started investigating whether Hernandez had previously committed misconduct that made her ineligible for her position. In other words, the investigation that led to Hernandez's dismissal had already begun when Hernandez made her complaint about de los Reyes and Rodriguez. <u>See</u> Dkt. No. 32, pp. 6-7 (Licensing began the investigation on May 12, 2020; Hernandez reported the misconduct on June 5, 2020). The investigation could not be caused by the protected activity when it predates the protected activity. <u>See</u> <u>In re Parkland Health & Hosp. Sys. Litig.</u>, 2018 WL 2473852, at *11 (Tex. App. June 4, 2018) ("carrying out a previously planned employment decision is no evidence of causation.").

Additionally, Garza was not an employee of Comprehensive Health; she is an investigator for the Texas Department of Family and Protective Services. There is no

13

evidence in the complaint that Garza ever informed anyone at Comprehensive Health about Hernandez's complaint. The failure to plead that anyone at Comprehensive Health was aware of the complaint is fatal to any retaliation claim. Parkland Health, 2018 WL 2473852, at *11 ("where the person making the decision to terminate the plaintiff's employment has no knowledge of the protected activity, a causal connection cannot be shown"). Accordingly, this claim should be dismissed for failure to state a claim upon which relief can be granted.

## IV. Recommendation

It is recommended that the motion to dismiss filed by Comprehensive Health be granted. Dkt. No. 16. This case should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on February 14, 2022.

_____
Ronald G. Morgan
United States Magistrate Judge